## W. D. Chambers v. Murphy.

## Murphy v. Lily Chambers.

(Decided November 22, 1921.)

## Appeals from Nelson Circuit Court.

1. Frauds, Statute of—Sale of Land—Contract—Sufficiency of Description.—Where in a written contract for the sale of land between A. R. M and W. D. C., the land was described as "his land," with the further provision, "the said A. R. M. to remain on said premises or farm sold to the said W. D. C. within six months from date hereof," the description was sufficient to satisfy the statute of frauds.

2. Frauds, Statute of—Promise to Pay Debt of Another—Vendor and Purchaser.—Assumption of Lien Debt.—An agreement to discharge a lien as part of the consideration for the purchase of land is not a promise to pay the debt of another within the statute of frauds.

3.   Frauds, Statute of—Sale of Land—Signature By Agent—Parol
     Evidence of Agency.—An undisclosed principal may, upon his
     disclosure, be held to a contract made in his behalf by a duly
     authorized agent, and the agency may be established by parol tes-
     timony, notwithstanding the fact that the agent may have con-
     tracted in his own name without disclosing his agency or the
     name of his principal, and this rule has not been changed by the
     statute of frauds.

4.   Principal and Agent—Evidence of Agency—Sufficiency.—In an
     action to hold a wife on a written contract for the purchase of
     land signed by her husband, evidence held insufficient to show that
     the husband acted as the authorized agent of his wife.

KELLEY & KELLEY for A. R. Murphy.

C. T. ATKINSON and C. D. MINOR for W. D. Chambers and Lily
Chambers.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in
each case.

Alleging in substance that, by written contract here-
inafter set out, he had sold his farm to Lily Chambers
and her husband, W. D. Chambers, who, in signing the
contract, acted for himself and as the authorized agent
of his wife, plaintiff, A. R. Murphy, brought this suit to
recover the consideration agreed to be paid, and asked
that the land be sold and the proceeds, after paying cer-
tain lien indebtedness, be applied on the purchase price.
On final hearing the relief asked was granted against W.
D. Chambers, but denied as to Lily Chambers. W. D.
Chambers appeals, and from the judgment dismissing
the petition as to Lily Chambers, plaintiff prosecutes a
separate appeal.

Omitting the caption and the signatures of. A. R.
Murphy and W. D. Chambers, the contract is as follows:

"In matter of contract by and between A. R. Mur-
phy, of Boston, Nelson county, Kentucky, and W. D.
Chambers, of Perryville, Boyle county, Kentucky, which
is as follows, the said A. R. Murphy, in consideration of
eighteen thousand dollars for his land, of which one hun-
dred dollars cash in hand paid, and the understanding
as to the deferred payments between the parties hereto
and the following conditions, the said A. R. Murphy to
remain on said premises or farm sold to the said W. D.
Chambers within six months from the date hereof, but
the said Murphy to have thirty days' notice prior to the
surrender of said premises. It is understood by the

parties hereto that the said W. D. Chambers to have the crops now growing or may be grown upon said land the present year. The said Murphy to take the same care of said lands as is necessary to protect said land and crops. The said Chambers to pay the expense necessary to making and saving said crops.

"Witness our hands this May 6th, 1919."

The first question presented is whether the description meets the requirements of the statute of frauds. It is the rule that the contract or memorandum must itself furnish the means of identifying the land, and unless it does, the contract is within the statute. McCulloch v. McCombs Producing and Refining Co., 191 Ky. 518, 230 S. W. 917; Bates v. Harris, 144 Ky. 399, 138 S. W. 276, 36 L. R. A. (N. S.) 154. Clearly if the contract had described the farm as the home place of the grantor, or the place on which he resided, it would have been sufficient. Campbell v. Preece, 133 Ky. 572, 118 S. W. 373. Doubtless, if the contract contained no other description than "his land," the description would not have been sufficient, but the contract does not stop there. It contains the further provision, "A. R. Murphy to remain on said premises or farm sold to said W. D. Chambers within six months from the date hereof, but the said Murphy to have thirty days' notice prior to the surrender of said premises." The words, "remain on," carry with them the idea that Murphy, the vendor, was on the premises or farm sold. That being true, the words, "his land," coupled with the provision that he was to remain on the premises, were equivalent to the words, "the farm on which he resides." With these elements of identification any one could locate the property sold, which, as a matter of fact, was the farm on which Murphy resided and the only farm which he owned. We therefore conclude that the description was sufficient to take the case out of the statute of frauds.

But it is insisted that, as Chambers assumed a lien debt on the premises for several thousand dollars, it was an oral promise on his part to answer for the debt of another, and was therefore unenforcible under the statute of frauds. Chambers' agreement to discharge the lien debt was not a mere collateral undertaking to answer for the debt of another. On the contrary, the assumption of the debt was a part of the consideration which he agreed to pay for the land, and there being a new and sufficient consideration for the promise, the debt became

his own, and the statute does not apply. Jennings v. Crider, 2 Bush 322; Hodgkins v. Jackson, 7 Bush 342; Mudd v. Carico, Exr., 104 Ky. 719, 47 S. W. 1080.

It follows that the chancellor did not err in holding W. D. Chambers liable on the contract.

It remains to determine whether Mrs. Chambers is liable. The statute requires the contract to be in writing and signed by the party to be charged therewith, or by his authorized agent. Section 470, Kentucky Statutes. It has long been the settled rule that an undisclosed principal may be held to a contract made in his behalf by a duly authorized agent, and this rule was never changed by the statute of frauds. Moreover, the agency may be established by parol testimony, notwithstanding the fact that the agent may have contracted in his own name without disclosing his agency or the name of his principal. Walker v. Hafer, 95 C. C. A. 311, 170 Fed. 37, 24 L. R. A. (N. S.) 315. Hence, if the evidence be sufficient to show that W. D. Chambers, in making the purchase, acted not only for himself, but as the authorized agent of his wife, she, too, is liable on the contract. It appears that Mr. and Mrs. Chambers visited the farm on the day of the purchase. After remaining there for a while, they went to the home of Mat Lewis for dinner. After dinner Mr. Chambers returned to the farm, where he and Murphy agreed on the terms. Murphy says that when he proposed having the contract reduced to writing, Chambers said that his wife was putting up most of the money, but this statement was denied by Chambers and James and Mat Lewis, who were also present. James Lewis testified that when Chambers left his wife after dinner to go back to the farm, she told him to buy the place if he wanted to. Mat Lewis says that he heard Mrs. Chambers tell her husband to close the trade if it suited him. It further appears that after the purchase Mrs. Chambers advertised her farm and personal property for sale, and though the farm was sold, the purchaser failed to take it. Murphy says that when he called to see Mrs. Chambers for the purpose of finding out why they did not take his farm, Mrs. Chambers was seated on the front porch and gave as a reason for not taking the place that they were not able to sell their own place. Frank Newman, who was with Mr. Murphy, says that Mrs. Chambers merely said, "We can't take the place," but gave no reason. Mr. Arnold, a railroad agent, testified that after the contract was drawn up he saw Mrs. Cham-

bers at the railroad station and said to her, ''You are the people that have bought the Murphy farm.'' She answered, ''Yes, we bought the farm.'' There was further evidence that, after the contract of sale was made, Mrs. Chambers said that she would have to change her will. On the other hand, both Chambers and wife say that he purchased the farm for himself, and that she gave him no authority to make the purchase for her. Mrs. Chambers further says that her only interest in the matter was as wife of her husband. It was further shown that Mrs. Chambers kept a separate account in bank and always managed her own affairs. Because of the relationship between husband and wife, it is not unusual for a wife to examine a farm which her husband proposes to buy, or for the husband to obtain her assent before he makes the purchase; nor is it unusual, after the husband has purchased, for the wife to say, ''We bought the farm.'' Furthermore, it does not necessarily follow that the wife has authorized her husband to make the purchase for her merely because she desired to dispose of her own farm and had advertised it for sale. She may have felt that it was no longer necessary to retain the farm, in view of the fact that her husband had purchased another. It is apparent, therefore, that the circumstances relied on to establish the agency, even if uncontradicted, are by no means inconsistent with the theory that the husband, in making the purchase, may have acted for himself alone. That being true, we are not prepared to say that the evidence as a whole, considered in the light of the conflict in regard to certain material features, and in the further light of the usual and customary conduct between husband and wife, was sufficient to overcome the positive testimony that no agency existed.

Wherefore the judgment in each case is affirmed.