## MAIN v. TEXAS FARM BUREAU COTTON ASS'N. (No. 2433.)

(Court of Civil Appeals of Texas. Amarillo. March 18, 1925. Rehearing Denied April 15, 1925.)

**1. Agriculture ⊜⚊6—Crops grown by tenants held landlord's within marketing contract.**

Landlord's interest in cotton crop under lease for one-fourth of cotton raised or produced by tenants *held* "produced or acquired by or for him," within contract to sell all such cotton to co-operative association, though he authorized tenants to sell his part and pay him his share in money; sale by tenant being only act of agent.

**2. Appeal and error ⊜⚊1071(1)—Error in finding as to grade of cotton produced by one sued for breach of marketing contract, and contention that tenants were joint owners of crop, held immaterial, in view of provision for liquidated damages.**

Error, if any, in finding that cotton produced and acquired by landowner, sued by co-operative association for breach of marketing contract, was of middling grade or better, and contention that tenants renting land for half bale per acre became joint owners with defendant, *held* immaterial, in view of his agreement to pay association 5 cents per pound, middling basis, for cotton delivered, sold, etc., in violation of contract, as authorized by Vernon's Ann. Civ. St. Supp. 1922, art. 14½s.

**3. Injunction ⊜⚊191 — Perpetuation of injunction against disposition of crop to other than co-operative association, held not error.**

Where landowner disposed of cotton in violation of marketing agreement, and appeared in court to defend his action, court did not err in perpetuating injunction against disposition of crop to any other than co-operative association, where contract had year to run.

Appeal from District Court, Foard County; J. V. Leak, Judge.

Suit by the Texas Farm Bureau Cotton Association against R. E. Main. Judgment for plaintiff, and defendant appeals. Affirmed.

Cook, Cook & Cole, of Vernon, for appellant.

Aaron Sapiro, of Chicago, Ill., C. K. Bullard, of Dallas, and Bonner & Storey, of Vernon, for appellee.

RANDOLPH, J. This suit was brought by appellee in the district court of Foard county, Tex., against R. E. Main, to recover the sum of $2,500 liquidated damages, with in-

terest thereon, and for the sum of $250 attorney's fee, and $100 traveling expenses, under the terms of a certain marketing contract or agreement. Further relief was sought by way of mandatory injunction requiring the defendant, Main, to specifically perform such marketing agreement (which he had executed and was a party to), and that he and his agent be enjoined from disposing of their crop to any person other than the plaintiff association.

The marketing agreement herein in controversy is identical with the agreement set out in the opinion of Chief Justice Cureton, published in the case of Texas Farm Bureau Cotton Association v. Stovall, 113 Tex. 273, 253 S. W. 1101, and only such terms thereof as are here in controversy will be quoted by us for the purposes of the discussion of the questions presented for our decision.

[1] Appellant, by appropriate assignments of error and propositions, attacks the action of the trial court in his findings that during the years 1921, 1922, 1923, and 1924, the defendant, Main, produced and acquired a certain amount of cotton, which he sold and delivered to persons other than the plaintiff, in violation of his agreement, because such findings are based entirely upon evidence of cotton produced on land of said defendant during those years, and that the uncontradicted testimony shows that the defendant rented all of his lands during those years to tenants for one-third of the feed stuff, and one-fourth of the cotton, to be paid in money, and that the tenant had the possession and control of all the cotton until it was sold, and the rent out of the cotton was paid in money, and defendant never received or had control of any part of the cotton; and there is no evidence that defendant produced or acquired, either directly or indirectly, any cotton during those years.

Section 2 of the marketing contract provides as follows:

"The association agrees to buy, and the grower agrees to sell and deliver, to the association, all of the cotton produced or acquired by or for him in Texas during the years 1921, 1922, 1923, 1924, and 1925."

And 13 (a):

"This agreement shall be binding upon the grower as long as he produces cotton directly or indirectly, or has the legal right to exercise control of any commercial cotton or any interest therein during the term of this contract."

The evidence in the case shows that the defendant had a number of tenants who raised cotton during the years named above. The contract between the defendant and such tenants provided that he, as landlord, should receive one-fourth of the cotton raised or produced by them, and that the tenants should sell the cotton and pay him his one-fourth in money. The evidence discloses that this authority given to the tenant to sell the cotton and pay the landlord his one-fourth in money was given after the execution of the marketing contract, but this, under our holding, is probably immaterial.

The contract by defendant with his tenants was not what is known as a money rent contract—a contract stipulating certain money rent, regardless of the crop raised—but is a part crop contract in which the rent received is to be measured by one-fourth of the crop produced. The landlord's interest was in the crop, and the fact that he authorized his tenant to sell his part and give him the money does not change the status of that interest. Certainly the landlord's interest in the crop was interest "produced or acquired by or for him," and the sale by the tenant was only the act of an agent.

In the case of Long v. Texas Farm Bureau Cotton Association, 270 S. W. 561, recently decided by the Court of Civil Appeals at Fort Worth, that court said:

"Under such rental contract, the legal title to one-fourth or one-half of the cotton so grown was, primarily to say the least, in the defendant, and clearly that portion of the cotton was produced indirectly by him as much so as if it had been produced by employees working for daily wages; the only difference being that in this case the tenant producing the same was compensated for his services by the use of the land for the purpose of realizing for his own benefit the remainder of the crop grown. The fact that the tenant was by agreement with the landlord authorized and empowered to sell the landlord's interest did not convey title to the tenant to that interest."

That court further held that the title to one-fourth or one-half, as the case might be, being primarily vested in the landlord, he had the right to exercise control over it, and that right was recognized by both himself and the tenant, as evidenced by their agreement that the tenants should sell it for the landlord's account.

[2] Appellant's contention that the trial court erred in his finding that the cotton produced and acquired by the defendant was all middling grade or better was erroneous becomes immaterial in view of the following provisions of the contract:

"18(a) Inasmuch as the remedy at law would be inadequate, and inasmuch as it now and ever will be impracticable and extremely difficult to determine the actual damage resulting to the association, should the grower fail so to sell and deliver all of his cotton, the grower hereby agrees to pay to the association for all cotton delivered, sold, consigned, withheld, or marketed by or for him, other than in accordance with the terms hereof, the sum of 5 cents per pound, middling basis, as liquidated damages for the breach of this contract; all parties agreeing that this contract is one of a series dependent for its true value upon the adherence of each and all the growers to each and all of the said contracts."

Chief Justice Cureton, in the Stovall Case, holds that this provision in the contract permitting liquidated damages is authorized by the statute (article 14½s, Vernon's Ann. Civ. St. Supp. 1922), and in no way militates against the conclusion reached by him in assuming the constitutionality of the legislative enactment and of the contract.

Such liquidated damages being contracted for, and being authorized by the statute, the recovery of 5 cents per pound upon a middling basis cotton authorized the court to render judgment for such liquidated damages without the necessity of making the finding complained of.

The appellant's contention that some of the tenants rented their land upon a rental of one-half bale per acre, they thereby became joint owners with the defendant, and, to that extent, vested title in them so far as the control of the cotton was concerned, has been practically answered above. The rental was one-fourth of the cotton which was sold by the tenant and the landlord's part paid him.

Under our view of this case the defendant's good faith, or want of good faith, was an immaterial issue, but we are of the opinion that the finding of the court that the claim of money rental made by the defendant was a subterfuge and an attempted evasion of the contract is sustained by the evidence in the case.

[3] It being shown that the defendant had disposed of cotton under the terms of the contract, and the defendant having appeared in court to defend his action in making disposition of said cotton, and of his right to dispose of same, the court did not err in perpetuating the injunction, as the contract has one year more to run.

We therefore overrule all propositions and assignments of appellant, and affirm the judgment of the trial court.