# Dark Tobacco Growers' Co-Operative Association v. Daniels.

(Decided June 8, 1926.)

## Appeal from Warren Circuit Court.

1. Agriculture—Member of Co-Operative Association Held to Violate Agreement by Failing to See that Tobacco Raised on Land Leased to Another is Marketed According to Agreement (Bingham Co-operative Marketing Act, Section 18c [Laws 1922, c. 1]).—Co-operative marketing agreement and Bingham Co-operative Marketing Act must be construed as part of every lease of land, owned or controlled by member of co-operative association, for purpose of raising farm products, and his failure to exercise his presumed control over delivery of crops under section 18c, by seeing that tobacco raised on land is marketed acording to such agreement, is violation thereof.

2. Agriculture—Co-Operative Marketing Association Can Recover From Member Stipulated Amount Per Pound of Tobacco Sold by Member's Lessee in Violation of Agreement.—Where nonmember of co-operative marketing association declined to deliver to association tobacco produced by him on land leased to him by member without stipulating for delivery of tobacco to pool in accordance with marketing agreement, association can recover from member

stipulated amount per pound of such tobacco as liquidated damages.

RODES & HARLIN and AARON SAPIRO for appellant.

THOMAS, THOMAS & LOGAN for appellee. ·.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellee, Daniels, a landowner and tobacco grower, in Warren county, joined the appellant association in 1922, and raised and delivered tobacco in accordance with the terms of the association agreement in that year and the year 1923. Early in the year 1924, he decided to go to Akron, Ohio, and accept employment as a carpenter, whereupon he sold at public outcry most of his personal property and took his family and went to Akron. Before leaving Kentucky he leased his farm in Warren county to one Matlock for the year 1924, without restrictions or limitations as to the kind or quantity of crops to be grown, Matlock agreeing to pay $300.00 as rental, but not to pay any part of the crop. Nothing was said about growing tobacco on the farm. Matlock was not a member of the pool. After Daniels went to Ohio Matlock planted a crop of tobacco and raised about 4,775 pounds which he, in due course, delivered to and sold over a loose leaf floor, against the consent of appellant association. This suit was instituted by appellant association against Daniels in the Warren circuit court to recover five cents per pound or the gross sum of $238.75, as liquidated damages, and for $75.00 as attorney fees, cost and expenses incurred by the association in the institution and prosecution of this action in accordance with section 18 (a) of the association agreement which provides that "inasmuch as it is extremely difficult to determine the actual damage resulting to the association should the grower fail so to sell and deliver all of his tobacco, the grower hereby agrees to pay to the association for all tobacco delivered, consigned or marketed or withheld by or for him, other than in accordance with the terms hereof, the sum of five cents per pound as liquidated damages, averaged for all types and grades of tobacco, for the breach of this contract."

And further,

"If the association brings any action whatsoever by reason of a breach or threatened breach

hereof, the grower agrees to pay to the association all costs of court, cost for bond and otherwise, expenses to travel and all expenses arising out of order caused by the litigation and any reasonable attorney's fee expended or incurred by it in such proceedings, and all such costs and expenses shall be included in the judgment and shall be entitled to the benefit of any lien securing any judgment hereunder.''

The parties made a stipulation of fact which is filed as a part of the record and which shows that appellee Daniels would testify that,

''The rental of said farm to Matlock was made in good faith and without any intention or purpose to evade any law or any contract or to escape any of the provisions of the contract with plaintiff in regard to tobacco.

''The defendant, W. A. Daniels, received no part of the money for which said tobacco was sold, either directly or indirectly, and was not present at the time said tobacco was sold and did not visit the warehouse at Franklin while said tobacco was there, and had no connection of any kind or description with the delivery or sale of said tobacco.''

But this evidence is not admitted to be true by the association.

Appellee, Daniels, in becoming a member of the association agreed that if ''he produces any tobacco or acquires or owns any interest in tobacco as landlord or lessor during the term thereof, it shall be included under the terms of this agreement and must be sold only to the association.'' And further, ''He shall deliver all the tobacco produced by or for him, . . . and all tobacco owned or produced by him . . . or he has the legal right to exercise any control over or any commercial tobacco or any interest therein as producer or landlord during the term of this contract,'' being parts of sections 11, 12 and 13a, of the marketing agreement, and these sections are relied upon by appellee to show that the marketing agreement only required him to deliver to the association such tobacco only as he produced or acquired or owned any interest in as landlord or lessor, and did not require him to deliver or cause to be delivered tobacco raised by a tenant paying money rent, upon land

owned by him if he had no interest in the tobacco as grower or landlord, by purchase or otherwise.

Appellant association, however, insists that section 18c of the Bingham Co-operative Marketing Act, enters into and becomes one of the terms of the contract. Section 12 of the co-operative marketing agreement, in part provides:

"You Deliver All the Tobacco You Raise or Control.

"This agreement shall be binding upon the grower as long as he produces tobacco directly or indirectly, or has the legal right to exercise control over or any interest therein as a producer or landlord during the term of this contract."

The Bingham act provides, in substance, that a landlord is conclusively presumed to have the power to control delivery of crops grown on his land. Construing that section of the act this court in Feagain v. Dark Tobacco Growers' Co-operative Association, 202 Ky. 801, 261 S. W. 607, said:

"It was within the power of the legislature to provide a rule of conclusive presumption on the question of the landlord's power to control the delivery of the products (Young v. Duncan, 218 Mass. 346, 106 N. E. 1), and, as a conclusive presumption cannot be overcome by contrary proof, the effect of the provision is to put it out of the power of either the landlord or the tenant to plead or prove any fact tending to show that the landlord did not have such control."

The landlord could rent or lease his land and could thus control the sale and delivery of crops, and had the power by stipulation to reserve to himself the right to have tobacco or any other crop produced on his land, sold or delivered upon a certain market or to a certain person or association. The marketing agreement and Bingham act must be construed as a part of every rental contract or lease of land for the purpose of raising farm products which the member makes with reference to land owned by him or in which he has an interest or over which he has control. In every such instance he has the legal right to exercise control over the crops. The spirit and substance of the Bingham act and marketing agree-

ment signed by the member requires him to exercise control over his lands to the extent of seeing that all tobacco raised thereon is marketed according to his agreement. A failure to exercise such control in the manner indicated is a violation of his agreement.

Appellee, Daniels, was conclusively presumed to have had control over the tobacco grown upon his lands in the year 1924, while he was a member of the association. He rented the land to Matlock for farming purposes for that year without stipulating or requiring Matlock in case he grew tobacco to deliver it to the pool in accordance with the marketing agreement, signed by appellee. Matlock declined to deliver tobacco produced by him, a nonmember, to the association and sold it over a loose leaf floor. Thus we see that tobacco grown on the lands of appellee, Daniel, a member, and over which land he was and is conclusively presumed to have control as to crops was sold and delivered in violation of the marketing agreement with the association. This, according to the marketing agreement, entitled the association to recover of appellee five cents per pound liquidated damages on all tobacco so sold, and such reasonable attorney fees and other expenses of litigation as were actually incurred in enforcement of its rights under the association agreement. In holding otherwise the trial court was in error. Judgment should have been entered in favor of the association on the facts as presented.

Judgment reversed for proceedings consistent with this opinion.