# Dark Tobacco Growers' Co-Operative Association v. Garth.

(Decided February 18, 1927.)

## Appeal from Todd Circuit Court.

1. Exceptions, Bill of—Where Time for Filing Bill of Exceptions and Evidence is Extended to Following Term, Presiding Judge May Attest Bill, Though he Does Not Preside at Following Term (Acts 1920, Chapter 118, Amending Civil Code of Practice, Section 334). —When time for filing bill of exceptions and evidence was extended to following term, regular and special judge who presided at the trial, and who, at time bill was filed, was neither dead, nor had his term of office expired, had. power to attest the bill under Acts 1920, c. 118, amending Civil Code of Practice, section 334, though another special judge presided at following term.

2. Principal and Agent—Principal is Bound by Agent's Contract Within Limits of Express or Implied Authority, Generally Whether Authority is Written or Oral.—Principal is bound by contract of his agent made within the scope of the agent's express authority at the time or within the scope of his implied authority, and this whether the contract is verbal or written, unless law requires agent's authority to be written in order to bind principal in particular case.

3. Principal and Agent—Agent's Contract Within Authority and for Benefit of Principal Binds Principal, Though Made in Name of Agent Alone.—Contract entered into by agent within his authority, and for benefit of principal, will bind the principal as though the contract had been expressly executed in his name, notwithstanding that it was entered into in the name of the agent alone, and this is true whether contract is verbal or written, unless the law requires agent's authority to be written in particular instance.

4. Husband and Wife—Membership Contract in Co-operative Marketing Association, Entered in Name of Husband Alone, Held to Bind Wife as Undisclosed Principal.—Where husband was general agent of wife in growing, producing, and marketing crops, held that membership contract in co-operative tobacco marketing association, entered into in name of husband only, was in law the contract of the wife, who was liable for its breach, notwithstanding that the husband did not have written authority from the wife to sign the contract.

5. Husband and Wife—Liability for Breach of Membership Contract in Co-operative Marketing Association Held Not Affected by Subsequent Change in Authority of Husband as Agent Making Contract.—Where membership contract in co-operative tobacco marketing association, entered into by husband, was contract of wife as undisclosed principal, subsequent changes between husband and wife in management of farm affecting his authority could not affect wife's liability for breach of contract.

6. Husband and Wife—Evidence Held Not to Show Change in Husband's Authority so as to Relieve Wife from Liability for Breach of Marketing Contract Signed by Husband for Wife.—In suit for breach of membership contract in co-operative tobacco marketing association, signed by husband for wife, evidence held not to show substantial changes in husband's authority as to management of farm so as to relieve wife from liability for breach of contract.

7. Courts—Determinations by Court of Appeals on Injunction Motions Before Single Justice are Not Binding, but are as Persuasive as Opinions of Other Courts of Last Resort (Civil Code of Practice, Section 297).—Determinations, on applications to Court of Appeals before a single member for reinstatement or dissoluction of injunctions, under Civil Code of Practice, section 297, are not binding, and without the authority of an opinon by the court, but are at least as persuasve as opinions of courts of last resort in other jurisdictions.

EVERETT S. PENICK, C. A. DENNY and ROY G. GARRISON for appellant.

PETRIE & STANDARD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On April 26, 1922, Alexander Garth, the husband of appellee and defendant below, Evie Garth, signed a membership contract in the appellant and plaintiff below, Dark Tobacco Growers' Co-operative Association. Defendant owned by inheritance from her mother a farm in Todd county containing 360 acres, and both prior and subsequent to the mother-in-law's death the husband seems to have had the sole and exclusive management and operation of the farm upon which he and his tenants grew an assortment of crops, including tobacco. He, without consulting his wife, made the tenant contracts, sold the produce and collected the money, depositing it sometimes in his name, but more frequently in that of his wife, and when so done he would issue checks for current expenses to which he would subscribe his wife's name by him, and in that way he appears to have had complete control of not only the management of the farm, but also the disposition of its products. For the years 1922 and 1923, without any objection from his wife, this defendant, he delivered all the tobacco grown on the farm to the association pursuant to the obligations of the membership contract. He became dissatisfied with its workings and operations and he and the defendant claim to have

had a new understanding at the beginning of the year 1924, by which he would cease growing tobacco and that what was thereafter grown should be at the instance, request and under the control and management of defendant exclusively. Some twenty odd acres of that product was grown in 1924 and the tenants delivered it to a loose-leaf warehouse and it was sold outside of the pool. In other words, the crop for that year was disposed of by what is commonly known as the "dumping" process, and this ordinary action was filed in the Todd circuit court to recover of defendant the 5% liquidated damages provided for in the membership contract in such cases. The answer denied that defendant was a member of the association, or that she had ever been, and asserted her right to ignore the contract signed by her husband alone, and that pursuant thereto she did ignore it in the manner indicated for the year 1924. Appropriate pleadings made the issues, and upon trial the court overruled plaintiff's motion for a peremptory instruction in its favor, and submitted the cause to the jury under instructions and it returned a verdict in favor of defendant, upon which judgment was pronounced dismissing the petition. Plaintiff's motion for a new trial was overruled, and it prosecutes this appeal.

At the beginning we are met with a motion to strike the bill of exceptions and evidence from the record upon the ground that it was not attested by the special judge who presided at the March, 1926, term of the Todd circuit court when it was filed pursuant to an extended time for the purpose, given by another special judge who presided at the trial during the December, 1925, term. The trial special judge was Hon. Basil Richardson, the regular circuit judge of the 10th circuit court judicial district, and he gave until a named day in the following March, 1926, term for plaintiff to prepare and file its bill of exceptions and evidence. At the latter term Hon. Doyle Willis, a practicing attorney at the bar, was designated and presided as special judge for that term. The bill of exceptions, duly attested by Judge Richardson, was tendered and filed at the March, 1926, term of court within the extended time, but Special Judge Willis did not attest it, and for that reason it is insisted that it was not properly attested and should be stricken. In support of that contention we are cited to a number of cases, some of which are Sandy Valley & Elkhorn Ry. Co. v. Moore, 175 Ky.

163; Combs v. Combs, idem 523, and City of Pikeville v. Dils, idem 697. But we do not regard the opinions in those cases, upon the essential practice in preparing and filing bills of exceptions, as applicable to the facts here presented.

At the time those opinions were rendered, chapter 118, Acts 1920, page 556, amending section 334 of the Civil Code of Practice, had not been enacted, and it was held in each of them that the presiding judge at the extended term for the filing of bills of exceptions, when he was not the one who presided at the trial, could not attest them, nor could a regular judge who did preside at the trial, but whose term of office had expired, make such attestation, but that in such cases the only method by which the record could be presented to this court was through a bystander's bill; and that the same was true when the judge who presided at the trial was dead at the succeeding term of court to which time was extended. However, the amendment referred to provided that: "If the judge of said court shall die or resign, or his term of office shall expire before the term of court to which time is given to file bill of exceptions, or if the regular judge of the court, or any special judge who shall have tried the case, does not preside at the said next term of court, then it shall be the duty of the regular judge of said court, if present and presiding, or any special judge who may be presiding at said term of court, to sign said bill of exceptions, and attest the transcript of testimony taken by the official stenographic reporter and make all necessary orders with reference thereto."

Prior thereto we held in the cases of McFarland v. Burton, 89 Ky. 294; Phillips v. Beattyville M. & T. Co., 30 K. L. R. 1103, Murray v. East End Improvement Co., 22 K. L. R. 1477, and Louisville Southern R. Co. v. Lewis, 101 Ky. 296, that a special judge who presided at the trial and who entered the order extending the time for the filing until the next term of court (if still alive) was the proper one to attest the bill of exceptions although it was not filed until the term to which time was extended. We do not regard the 1920 amendment, *supra,* as dispensing with that practice, since our construction of it is that it was the purpose of the legislature in enacting it to *also* confer the authority and the power upon the presiding judge at the term to which time was given to attest the bill and for it to have the same effect as if done by the

judge who presided at the trial. The intention was to dispense with the necessity of having to make a by-stander's bill in the contingencies and under the circumstances that the cases, *supra,* held must be done, and that was true whether such presiding judge was a special or a regular one. In this case, Judge Richardson at the time the bill of exceptions was filed was neither dead, nor had his term of office as regular and special judge expired, and under the last cases cited he had the right to attest the bill of exceptions, as was done in this case, although it would have been valid if attested by Judge Willis as special judge of the March, 1926, term of the court during which it was filed. It results, therefore, that the motion to strike the bill of exceptions from the transcript must be and it is overruled, and which brings us to a consideration of the merits of the case.

Two of the well settled principles of the law relating to principal and agent are: (1) That a principal is bound by the contract of his agent when at the time it was made the agent acted within the limits of his express authority or the scope of his implied authority, and (2), that although the contract may be entered into in the name of the agent alone, yet if it is within his authority and for the benefit of his principal the latter will be liable as though the contract had been expressly executed in his name. Authorities for the latter proposition are 21 R. C. L. 890-891, paras. 63-64; Chambers v. Murphy, 192 Ky. 839, and Bell v. Borders, 205 Ky. 181. Those principles are true whether the contract is verbal or in writing, unless it is such a one as the law requires written authority to the agent in order to bind the principal. The membership contract involved in this case is not one where the agent's authority is required to be in writing, and the fact that defendant's husband did not have written authority from her to sign the contract at the time he did so can not serve to relieve her from its burdens if she was otherwise bound.

We have hereinbefore seen that defendant's husband at and prior to the time he signed the contract was and had been exercising full and unlimited authority in the management of the farm, the disposition of its products and in the collection and payment of the proceeds thereof. The evidence discloses that if he had been the absolute owner of the farm in fee he could have exercised no

greater authority than he did. Necessarily, then, he was at that time and had been continuously prior thereto the general agent of his wife, not only in the growing and producing of agricultural products therefrom, but also in marketing them. The statute under which plaintiff was organized was enacted for the express purpose of creating a method of marketing tobacco supposed to be in the interest of the producer, and it would seem to follow that the husband, possessing the authority which we have recited, undoubtedly acted within the scope thereof when he, in the legal manner, accepted the statutory provided method of marketing the tobacco grown on his wife's farm, and in subscribing his name to that contract it was for the supposed benefit of not only himself but also of that of the owner of the farm in the management of which he was vested with such unlimited authority. That being true, the contract immediately upon its execution, although in the name of the husband alone, became the contract of the wife, and the association with whom it was made could look to her as an undisclosed principal for the fulfillment of its obligation wherever it discovered that she was such a one.

In that view of the case it would make no difference what changes, if any, the husband and wife attempted to make in the management of the farm at the beginning of the year 1924. However, as we construe and weigh the evidence we are not prepared to find that there were any substantial changes at the beginning of that year, even if that question was a material and relevant one. Surrounding neighbors testified that they detected no difference in the activities of the husband throughout the year 1924 in the management of the farm and in the growing of the crop of tobacco, from those that he had exercised in previous years, and it was testified to and not denied that he himself grew on the farm four acres of the tobacco that was produced in 1924.

We have had before us a number of similar cases on injunction motion brought before a member of this court pursuant to section 297 of the Civil Code of Practice, involving practically the same facts as are disclosed by the record in this case. One of them was Burley Tobacco Growers' Co-operative Association v. Allphin, from the Kenton circuit court, the motion having been made before Judge Sampson, but it was heard by a majority of the members of the court, and we held that the facts dis-

closed only an effort to obtain relief from the obligations of the membership contract that had been signed by the husband alone, his wife owning the land; and we also held therein that the wife was bound by the terms of the contract upon the ground that it was executed by her husband for and on her behalf, with full knowledge on her part, and in which she afterwards ratified by acquiescence. It is true that the court's determinations upon such applications are not binding, not possessing the authority of an opinion by the court as such, but they are persuasive at least to the same extent and in the same manner as are opinions of courts of last resort in other jurisdictions.

Analogous testimony was involved in the two cases of the Dark Tobacco Growers' Co-operative Association v. Alexander, 208 Ky. 572, and Burley Tobacco Growers' Co-operative Association v. Devine, 217 Ky. 320, and we held that it therein disclosed only a subterfuge for the purpose of evading the obligations of the membership contract, and we can attribute no greater force to the testimony found in this record. We have not overlooked the case of Burley Tobacco Growers' Co-operative Association v. Jewell, 213 Ky. 272, wherein we held that under the facts there appearing the husband, who alone signed the membership contract and who owned part of the land involved, did not possess the general authority from his wife as did defendant's husband in this case, nor did he contribute in any substantial measure to the producing of the particular crop of tobacco there involved. It therefore follows that the court should have sustained plaintiff's motion for a peremptory instruction for a judgment in its favor, to be measured by the amount of the tobacco grown on defendant's farm for the year 1924 and which was sold contrary to the terms of the membership contract at five cents per pound.

For its failure to do so the judgment is reversed, with directions to sustain the motion for a new trial, and if the evidence is substantially the same on another one the peremptory instruction will be given as herein directed, and for further proceedings not inconsistent with this opinion.