No. 27,735.

THE KANSAS WHEAT GROWERS ASSOCIATION, *Appellant,*
v. E. W. LUCAS, *Appellee.*

(262 Pac. 551.)

SYLLABUS BY THE COURT.

AGRICULTURE — *Marketing Agreements — Subterfuge to Avoid Complying With Contract.* In an action by a coöperative wheat growers' association against one of its members for damages for the failure to deliver wheat alleged to have been grown by him in certain years in which defendant contended that he raised no wheat and that the land on which the wheat was grown was leased by his wife and that he worked for her, the evidence is examined and held that it sufficiently tends to show that the leasing of the land to the wife was a subterfuge to enable defendant to avoid complying with his contract with plaintiff, and that the question should have gone to the jury.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed January 7, 1928. Reversed.

*T. A. Noftzger, George W. Cox, W. J. Masemore, R. L. NeSmith,* all of Wichita, and *C. C. Calkin,* of Kingman, for the appellant.

*H. E. Walter,* of Kingman, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by the Kansas Wheat Growers Association, a coöperative marketing association, organized under the statute (R. S. 17-1601, *et seq.*) against one of its members for damages, stipulated in its contract with him, for his failure to deliver wheat, alleged to have been grown by him, to the association. The trial court sustained a demurrer to plaintiff's evidence, and it has appealed. The sole question before us is whether there was sufficient evidence to go to the jury.

The facts are substantially these: In May, 1922, defendant signed the contract of membership and marketing agreement with

Agriculture, 2 C. J. p. 998 n. 31 new.

the plaintiff association. At that time he was a tenant farming land belonging to his father-in-law, W. T. Manson, and had at that time a crop of growing wheat. After the harvest of 1922, and some time in September, he wrote the association that he had mortgaged his wheat before he signed the contract and marketing agreement with the plaintiff, and that the parties who held the liens had demanded the wheat. The secretary of the plaintiff wrote inquiring the amount of wheat he had and what mortgages there were against it. He wrote that he had 928 bushels of wheat, that there were two mortgages against it, one for $800 and one for $675. Plaintiff's secretary then advised him that since the mortgages amounted to more than the value of the wheat, and the mortgages had been given prior to the time of his becoming a member of the association, the mortgagees were entitled to have the wheat delivered to them, and that he need not deliver it to the association. Defendant delivered no wheat to the association for that year, nor for the years 1923, 1924 and 1925. His contract with the association contained a provision by which he agreed that if he did not deliver wheat grown by him to the association he would pay 25 cents per bushel as liquidated damages. This action was brought to recover that sum for failure to deliver the wheat alleged to have been grown by him in the years 1923, 1924 and 1925. The defendant contends that he raised no wheat in those years. At the trial plaintiff called as witnesses on its behalf the defendant, his wife, and others. This evidence was to the effect that after September 15, 1922, the owner of the land, by a written lease, rented the wheat land on the place where defendant was farming to the defendant's wife, dating the lease back to the first day of August, 1922, for a term of five years, and that since that time defendant had simply worked for his wife in whatever he had done toward raising wheat harvested in 1923, 1924 and 1925. He said this was done because plaintiff refused to take the wheat grown by him and harvested in 1922. The evidence further showed that on two or more occasions defendant had mortgaged as his own the wheat he now contends he was raising for his wife. The evidence further tended to show that defendant went along farming the land very much as he had done before, working on it and using his implements, and taking the proceeds of the wheat to pay his individual debts and the living expenses of his family, as well as mortgaging it to secure his personal obligations.

Plaintiff contends that this evidence tends to show that the purported lease to defendant's wife was simply a subterfuge to avoid complying with the marketing agreement which defendant had made with plaintiff. It is true, as contended by appellee, that in this state a woman may own property and conduct a business in her own name. No reason is suggested, so far as her legal status is concerned, why she could not conduct a farming business. It is also true, under the marketing agreement, that a member of the association may quit raising wheat if he desires to do so without being under any liability to the plaintiff association. But if having the written lease made to defendant's wife was simply a device or subterfuge by which defendant sought to avoid carrying out his marketing agreement with plaintiff, and if, in fact, the defendant went on raising wheat just as he had in the past, and did raise wheat for the harvest of 1923, 1924 and 1925 which he did not deliver to the association, that device would not relieve him from liability to the association. (*S. C. Cotton Growers Coöp. Ass'n v. English*, 135 S. C. 19; *Burley Tob. Growers Coöp. Ass'n v. Devine*, 217 Ky. 320; *Monte Vista Ass'n v. Bond*, 80 Colo. 516; *Dark Tobacco Growers' Coöp. Ass'n v. Garth*, 291 S. W. 367 [Ky.].)

In sustaining the demurrer to plaintiff's evidence the trial court said he thought the demurrer should be sustained for two reasons—that plaintiff had failed to show that defendant raised wheat in the years in question, and had failed to show, if he had raised wheat, where he had sold it. The second of these is not a sufficient reason for sustaining the demurrer, for if defendant raised wheat it was his duty to deliver it to plaintiff, and if he did not do so he was liable without regard to where he may have sold it. Without determining whether it should be controlling in its final analysis, we think the evidence offered on behalf of plaintiff tends to show that defendant did raise wheat in the years in question, and that the lease of the wheat land to his wife was a device or subterfuge designed to enable defendant to not deliver any wheat grown by him to the plaintiff association.

The judgment of the court below is reversed, with directions to overrule the demurrer to the evidence and to grant a new trial.