No. 28,606.

The Kansas Wheat Growers Association, *Appellant*, v. E. W. Lucas, *Appellee*.

(278 Pac. 6.)

Opinion filed June 8, 1929.

T. A. Noftzger, George W. Cox, Lawrence Weigand, all of Wichita, and C. C. Calkin, of Kingman, for the appellant.

H. E. Walter, of Kingman, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the Wheat Growers Association against E. W. Lucas, a member of the association, to recover damages resulting from an alleged noncompliance with a marketing contract, in that defendant failed to deliver to plaintiff wheat alleged to have been grown by him during the years 1922, 1923, 1924 and 1925. It was stipulated in the contract between the parties that if defendant did not deliver the wheat in accordance with the agreement he would pay to plaintiff twenty-five cents per bushel as liquidated damages. At the end of the first trial the court sustained a demurrer to plaintiff's evidence, and upon an appeal this ruling was reversed. (Kansas Wheat Growers Ass'n v. Lucas, 124 Kan. 773, 262 Pac. 551.) A second trial was had which resulted in a verdict for defendant. The verdict was accompanied by four special findings. The first was to the effect that no wheat was produced by or for the defendant, either directly or indirectly, or had been acquired by him and not retained for feed or seed to be sown by himself during the years 1922, 1923, 1924 and 1925. The other special findings are not material in this appeal. The plaintiff moved to set aside all of the special findings, but the motion was overruled except so far as it related to that part of finding No. 1 that no wheat was produced by or for defendant in the year 1922, and except as to that the motion was overruled. Motions were made by plaintiff for judgment on the evidence and for a new trial, but these were denied and judgment entered for defendant. Plaintiff appeals and complains that the evidence required a judgment for plaintiff notwithstanding the verdict and that there was error in the instructions given.

The plaintiff contends on this appeal that, regardless of its right to the delivery of other crops, it was entitled to the delivery of the crop of 1922, amounting to 928 bushels. It is insisted that the damages should have been awarded on that crop admitted to have been grown by the defendant notwithstanding that it had been mortgaged to

other parties before the contract with the association was made. It appears that on September 11, 1922, the defendant wrote to the association stating that the wheat he had raised in that year had been mortgaged and informed the plaintiff of the liens and of the demand of the mortgagees for the crop. In answer to that letter the association wrote as follows:

"WICHITA, KAN., Sept. 22, 1922.

"*Mr. E. W. Lucas, Nashville, Kan.:*

"DEAR SIR—We have your letter of September 15 in which you have advised us that you have 928 bushels of wheat to market this season and that you have two mortgages on this wheat, one for $800 and one for $675. Therefore, it appears to us that you will probably be unable to market your wheat through the association, as the holder of these liens has the right to take delivery of your wheat and have it sold to apply on their claim. As the value of your wheat is so much less than the amount of the mortgages, the association would be unable to take up this mortgage and take delivery of your wheat.          Yours very truly,

"THE KANSAS WHEAT GROWERS ASSOCIATION,
          (Signed)      "ERNEST R. DOWNIE, *Sec'y-Treas.*"

That crop, by reason of the declination of the plaintiff to receive it, as well as other concessions made, may be regarded as out of the case, leaving only for consideration the right of the crops of 1923, 1924 and 1925. Apart from plaintiff's letter declining to accept the crop of 1922, on account of the mortgage thereon, the plaintiff upon the first appeal of this case conceded that defendant was not under obligation to deliver that crop. In its brief then filed it stated:

"The plaintiff was always willing and anxious to receive the wheat of the defendant *except the crop of 1922, to which it was not entitled.*"

This court, observing that plaintiff itself had taken that question out of the case, determined the other questions raised in the appeal relating to the crops of the subsequent years. The plaintiff is not in a position to revive its claim for the crop of 1922 on this appeal. In the former appeal the question principally involved was whether a lease made to the wife of the defendant was a *bona fide* transaction or as plaintiff contended was a mere subterfuge to avoid compliance with defendant's contract. There was some evidence which tended in a slight degree to support plaintiff's contention, and hence it was held that this question of fact should have been submitted to the jury. On the second trial the matter in controversy was likewise the good faith of the leasing transaction. That question, as already stated, was settled by the jury in favor of the defendant and upon

some evidence tending to show that it was made in good faith. The land upon which the crop had been grown was owned by W. T. Manson, the father of Grace Lucas, who was the wife of the defendant. The lease to her was executed by Manson on August 1, 1922, and there was testimony tending to show that she controlled the leased land, directed what fields should be sown to wheat and to other crops. While the defendant and his brother worked on the farm, it is shown that she also helped to plow the land, helped drill in the wheat, drove a truck in transporting the wheat as well as oil and gas for the tractor, and also raised cattle and hogs. When the crops were thrashed she settled with her landlord and turned over to him his share of the wheat, delivering it at a certain place in accordance with the terms of the lease, and she testified that the defendant had nothing to do with these transactions or the control of the crop. There was testimony, too, that her husband, the defendant, was in poor health and had been for about three years of the period in question, having submitted to two operations, and that he had been able to do farm work only a part of the time. There was testimony that she controlled and sold the wheat that was produced. It is conceded that Mrs. Lucas had the same right to carry on business, to rent the land and to farm it and to dispose of the crop as she wished, but it is insisted that the leasing of the land by her and the exercise of control over the crops was a mere subterfuge to avoid compliance with the marketing contract of the defendant with the plaintiff. The fact that defendant helped to cultivate the ground and to raise and harvest the crops on the land leased by his wife does not necessarily imply that it was a fraudulent arrangement. It was competent, of course, for the plaintiff to produce evidence as to the part defendant had in working the leased farm, as tending to show that the lease was a mere subterfuge. On that phase of the case the court instructed the jury that—

"If you further find that the lease of said wheat land was made to the wife of the defendant as a device or subterfuge designed to enable defendant not to deliver any wheat grown by him to the plaintiff and that such wheat in truth and in fact was raised by the defendant, and not by his wife, such device or subterfuge would not relieve the defendant from liability to the association."

The defendant was not compelled to continue the growing of wheat during the full term of his membership in the association. He could, if he wished, abandon the wheat growing and let others assume that responsibility and devote his attention and time to

other purposes. He was required to deliver wheat raised by himself but not to deliver wheat raised by others. (*Kansas Wheat Growers Ass'n v. Garnett,* ante, p. 337, 278 Pac. 5.)

Some complaint is made of the instructions given and refused, but an examination of these discloses no material error. Like so many other appeals this is essentially a fact case, and while some evidence was produced by plaintiff in support of its contention that the lease in question was not a good-faith transaction, we cannot hold that the finding of the jury in favor of the defendant is not supported by sufficient evidence.

The judgment is affirmed.